**SIGNED this 22 day of December, 2011.**



_____
**James P. Smith
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 7 |
| | : | |
| IVEY MANAGEMENT CORPORATION, | : | |
| | : | |
| Debtor | : | Case No. 11-50274 JPS |
| | : | |
| IVEY MANAGEMENT CORPORATION, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| GEORGE H. IVEY, JR, individually, and GEORGE H. IVEY, JR., and JULIA MITCHELL-IVEY, in their official capacities as the Trustees of the Julia McCarty Ivey Trust V-B, | : | |
| | : | |
| Defendants | : | Adversary Proceeding |
| | : | No. 11-5029 |

BEFORE

JAMES P. SMITH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCE:

Plaintiff:                    Wesley J. Boyer
                              Katz, Flatau & Boyer, L.L.P.
                              355 Cotton Avenue
                              Macon, Georgia 31201

                              David B. Dunaway
                              212 West Main Street
                              P.O. Drawer 471
                              Thomaston, Georgia 30286


Defendants:                   Stephen C. Greenberg
                              John K. Rezac
                              Rich Kaye
                              Taylor English Duma, LLP
                              1600 Parkwood Circle, Suite 400
                              Atlanta, Georgia 30339

## **MEMORANDUM OPINION**

Before the Court is Defendants' motion for partial summary judgment on Counts One and Two of Debtor's/Plaintiff's amended complaint.[1] The Court, having considered the record, the evidence submitted and the applicable law, now publishes this memorandum opinion.

"A motion for summary judgment should be granted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' F.R.Civ.P. 56(c). . ." *Celotex Corp. v. Catrett*, 477 U.S. 371, 322, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986); *see also Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996). On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *See Cast Steel*, 347 F.3d at 1301." Midrash Sephardi, Inc., v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004), cert. denied 543 U.S. 1146, 125 S.Ct. 1295, 161 L.Ed.2d 106 (2005).

Although Rule 56 was completely rewritten in 2010, no change was made to the summary judgment standard itself or to the burdens imposed on movants and opponents. Wright, Miller & Kane, 10A Federal Practice and Procedure, Text of Rule 56, n.6 (Supp. 2011).

---

[1] The underlying bankruptcy case was originally filed as a Chapter 11 case on January 31, 2011. This adversary proceeding was filed by Debtor on February 25, 2011. The Chapter 11 case was converted to a Chapter 7 case on September 27, 2011. Although the trustee has not sought to be substituted as the plaintiff in this adversary proceeding, the trustee did file a response to Defendants' motion.

**BACKGROUND**

At all relevant times, L. Gregg Ivey has been the CEO, president, principal manager and operating officer of Debtor Ivey Management Company ("Debtor"). His wife, Paulette Ivey, has been the sole shareholder of Debtor. Gregg Ivey is the son of George H. Ivey, Jr. and Julia McCarty Ivey, who is deceased. Gregg Ivey is a beneficiary under a trust established by his deceased mother known as the Julia McCarty Ivey Trust V-B (the "Trust"). George Ivey and his current wife, Julia Mitchell Ivey, are Trustees of the Trust.

On January 1, 2008, Debtor, by and through its corporate officers Gregg and Paulette Ivey,[2] executed a promissory note in the principal amount of $500,000 in favor of George and Julia Mitchell Ivey, as Trustees of the Trust. The note contains an unconditional promise to pay all principal and interest in one installment on or before December 31, 2013.

Gregg Ivey asserts that Debtor borrowed this money to purchase an 11.111 percent interest in LRF Enterprises, LLC ("LRF") from George Ivey, individually. Gregg Ivey asserts that George Ivey stated that Debtor would not be required to repay the note, but that the Trust would be repaid the $500,000 through the sale of certain real property owned by LRF. Gregg Ivey further asserts that, although Debtor, using the proceeds of the note, transferred $500,000 to George Ivey, George Ivey did not transfer the LRF interest to Debtor.[3]

---

[2] Paulette Ivey signed as treasurer of Debtor.

[3] This breach of contract claim against George Ivey is the subject of Count V of Debtor's amended complaint and is not presented for decision by Defendants' motion.

On March 13, 2009, Gregg Ivey, on behalf of Debtor, and George and Julia Mitchell Ivey, as Trustees of the Trust, executed a note modification changing the maturity date of the $500,000 note to December 31, 2010. Also, on March 13, 2009, Gregg Ivey, on behalf of Debtor, executed a promissory note in the principal amount of $80,000 in favor of George and Julia Mitchell Ivey as Trustees of the Trust. The note contains an unconditional promise to pay the principal and interest on or before March 12, 2010.

Gregg Ivey asserts that he and his wife were having financial problems and that the purpose of the $80,000 was to help them meet their expenses. Gregg Ivey asserts that George Ivey stated that the $80,000 would not have to be repaid but that the $80,000 would be treated as a distribution to Gregg Ivey from the Trust at the end of the year.

To secure the $500,000 note and the $80,000 note, Gregg Ivey, on behalf of Debtor, executed a deed to secure debt dated March 13, 2009, in favor of George and Julia Mitchell Ivey as Trustees of the Trust on real property located in Upson County, Georgia. Paragraph 4.05 of the deed to secure debt provides:

> The Obligation Documents may be changed, waived, discharged or terminated only by an instrument in writing signed by the party against whom enforcement of such change, waiver, discharge or termination in writing is sought. The Obligation Documents contain the entire agreement between Grantor and Grantee relating to the loan transaction contemplated thereby and supercede entirely any and all prior written or oral agreements with respect thereto. Grantor and Grantee hereto acknowledge and agree that there are no contemporaneous oral agreements with respect to the subject matter hereof.

The "Obligation Documents" are defined as the deed to secure debt, the $500,000 note and the $80,000 note.

The notes, modification and deed to secure debt were prepared by attorneys under the direction of Gregg Ivey. Gregg Ivey has over 30 years experience as a commercial and residential developer, business owner and manager. He has been a member of the board of directors of two banks, has been involved in numerous loan transactions and is familiar with and understands loan documentation. He can read and does not have any diminished mental capacity.

In Debtor's "Ivey Management Corporation Financial Statements December 31, 2009 and 2008," Debtor acknowledged and scheduled the principal amounts of the notes without any qualification or limitations as to the enforceability of the notes.

In his affidavit in opposition to Defendants' motion for summary judgement, Gregg Ivey asserts that on January 13, 2010, in a conference with Mr. Tripp Kay, CPA, George Ivey reiterated that Gregg Ivey was a beneficiary of the Trust to whom he, George Ivey, wanted distributions made and that his intention was that any indebtedness of Gregg Ivey or his brother to the Trust would be allocated to their respective shares upon distribution of the Trust's assets upon the death of George Ivey. Gregg Ivey asserts that during the next three months, George Ivey continued to provide financial assistance to him by issuing checks drawn on the Trust's bank account. Gregg Ivey also asserts that one of the present trustees, Joseph Ivey,[4] sent an e-mail in October 2010[5], stating that a "new estate lawyer" for George Ivey was interpreting the Trust to require that distributions of either income or corpus could only be made to George Ivey and that significant tax liability could result if the Internal

---

[4] Joseph Ivey is the son of Gregg Ivey.

[5] See footnote 8, infra.

Revenue Service did not view the distribution as "true loans" or if the distribution were characterized as "either gifts or improper trust distributions." Gregg Ivey asserts that these incidents occurred after the execution and delivery of the promissory notes and provide significant evidence of Defendants' intentions and representations at the time of execution and delivery of the notes.

In Counts One and Two of Debtor's amended complaint,[6] Debtor contends, in relevant part,[7] that the above discussed representations by George Ivey concerning repayment of the $500,000 note and the $80,000 note were fraudulent. Debtor demands that George Ivey, in his individual capacity, pay monetary damages and that the notes be cancelled.

## **DISCUSSION**

In Carpenter v. Curtis, 196 Ga. App. 234, 395 S.E.2d 653 (1990), the court stated:

> Two actions are available to one who was fraudulently induced by misrepresentation to entering a contract: he can affirm the contract and sue for breach or seek to rescind and sue in tort for fraud and deceit. Affirmance of the contract by the defrauded party does not necessarily deprive him of the right to sue for damages for fraud, as the right to affirm and the right to fraud damages coexist. However, he must do nothing to waive the fraud.
>
> One situation whereby a defrauded party accepts the contract with the fraud in it and thereby waives the fraudulent misrepresentations is where the contract contains a clause which provides in essence that no

---

[6] The allegations and relief sought in Counts One and Two of Debtor's amended complaint are identical to those in the original complaint.

[7] The Court entered an order on May 3, 2011, dismissing the failure of consideration claim asserted in Count One of Debtor's complaint.

> representation, promise or inducement not included in the contract shall bind any party. This is an entire agreement and the merger provision controls, preventing a fraud-in-the-inducement defense unless it can be shown that the party claiming fraud lacked knowledge of the contract's content. Where a purchaser affirms a contract containing a merger provision, "he is estopped from asserting that he relied upon the seller's misrepresentation and his action for fraud must fail."
>
> The presence of a merger clause in the underlying contract is determinative if the defrauded party has not rescinded but has elected to affirm the contract. He is relegated to recovery under the contracts, and the clause will prevail. If the party rescinded, the merger clause is avoided and will not prevent recovery under a tort theory. Critical to rescission is the tender of benefits, the prompt restoration or offer to restore whatever the complaining party received by virtue of the contract. O.C.G.A. § 13-4-60.

395 S.E.2d at 236-37 (internal citations omitted).

In <u>Novare Group, Inc. v. Sarif</u>, 2011 WL 5830488 (Nov. 21, 2011) the Georgia Supreme Court stated:

> Where a purchaser affirms a contract that contains a merger or disclaimer provision, he is estopped from asserting reliance on a representation that is not part of the contract.
>
> . . .
>
> While justifiable reliance may be a jury question in a fraud case where no contract exists or where the contract has become void, it is a question of law in a case where the contract language prevails and the contract's merger clause precludes reliance on oral representations.

In the case at bar, the deed to secure debt contains a merger clause covering the deed and both notes. Accordingly, Debtor is estopped from asserting that it relied upon representations not contained in the documents.

Debtor contends that it was unaware of the merger clause because Gregg Ivey, in reliance upon his confidential relationship with his father George Ivey, did not read the loan documents.  See Yee v. Barnwell, 193 Ga. App. 820, 389 S.E.2d 392, 394 (1989) (reliance upon confidential relationship relieves one of duty to read contract).  However, Gregg Ivey directed the attorneys to prepare the notes, modification and the deed to secure debt.  He was in control of the process and had ample opportunity to ensure that the notes and modification contained the alleged representations regarding nonpayment (instead of the unconditional obligation to pay by a certain date) and that the deed did not contain a merger clause.  If the documents contained terms contrary to his understanding, the fault lies with him for not properly instructing the drafting attorneys.  He cannot blame his father or rely on a confidential relationship with the father when the father did not control the drafting process.

Further, even if there were grounds to rescind, "[w]here a party elects to rescind the contract, he must do so prior to filing the lawsuit." Novare, supra. 2011 WL 5830488.  No recision occurred prior to this adversary proceeding being filed.

Finally, one who seeks recession of a contract for fraud or false and fraudulent representation must restore or offer to restore the consideration received under the contract as a condition precedent to bringing the action unless the defrauding party has made restoration impossible or when to do so would be unreasonable.  Crews v. Cisco Bros. Ford-Mercury, Inc., 201 Ga. App. 589, 411 S.E.2d 518, 519 (1991), cert. denied; see O.C.G.A. § 13-4-60 .  Here, Debtor has not returned to the Trustees the money it received under the notes.  The fact that Debtor is financially unable to do so does not excuse it from this requirement.  Kobatake v. E.I. Dupont De Nemours and Co., 162 F.3d 619, 626-27 (11th

Cir. 1999), cert. denied, 528 U.S. 921, 120 S.Ct. 284, 145 L.E.2d 238 (1999).

## CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion for partial summary judgment as to Counts One and Two of Debtor's amended complaint.[8]

---

[8] Because the Court has granted the motion for summary judgment, it is unnecessary to rule of Defendant's hearsay objection to the October 2010 email from Joseph Ivey.